### KIGHTLINGER et, Plaintiffs, v. HULVEY, Executor et, Defendants.

Common Pleas Court, Trumbull County.

No. 62200. Decided May 19, 1953.

Paul E. Kightlinger, Warren, for plaintiffs.
George D. Lewis, Warren, for defendants.

**OPINION**

By McLAIN, J.

The plaintiffs herein, co-executors of the last will and testament of Lydia H. Wheeler, deceased, filed this action for the purpose of having the will of the decedent construed and asking direction of the court in the matter of distribution of the assets of the estate after provisions for the payment of debts, and the disposition of miscellaneous items.

Item 3 of said will provides as follows:

"All the rest, residue and remainder of my estate whether real, personal or mixed, and wheresoever situate, I give, devise and bequeath in equal portions so far as practicable, share and share alike, among my nieces and nephews, Paul M. Gregory, James B. Huff, Edith Hulvey, Charlotte Sugden, Helen Haverfield, Elythia Mecartney and Sarah Mogg. In the event any of my said nieces and nephews shall have predeceased me or shall die before distribution shall have been made by my executors, then I direct that the share of such deceased beneficiary shall be distributed among the survivors of said named nieces and nephews."

Item 4 of said will provides as follows:

"I nominate and request the Probate Court to appoint my attorney, Paul E. Kightlinger, of Warren, Ohio, and Mr. J. Owen Mogg, of Indianapolis, Indiana, to be the co-executors of this, my last will and testament. I hereby grant unto my said co-executors full power to sell and convey my real and personal property which has not been otherwise disposed of in kind upon such terms and at such prices as my said co-executors may deem proper and without obtaining any order of court therefor."

It is stipulated by the parties hereto, that Lydia H. Wheeler died September 18, 1952, in the city of Warren, Ohio; that she was a childless widow and left no brothers or sisters; that the seven nieces and nephews named as legatees in item 3 of her last will were her only heirs at law, none of whom resided within the state of Ohio, and that all seven of said legatees were living at the time of her death.

It is further stipulated that the inventory includes cash and

securities at $27,441.56, and a single family residence at 509 Genesee avenue in Warren valued at $29,750.00. The estate indebtedness, exclusive of administration expenses, is reported at $1,560.61.

Edith Hulvey, niece of Lydia H. Wheeler, and one of seven legatees named in item 3 of the Wheeler will, died on or about November 22, 1952, subsequent to the death of Mrs. Wheeler. John Hulvey, of Davenport, Washington, and a minor daughter, Jessie Lee Hulvey, survive the said Edyth Hulvey.

The exact question here presented is whether or not Edyth Hulvey, having died before distribution of the estate of the decedent, Mrs. Wheeler, became vested with any interest in the said estate which could pass, by virtue of her death, to John Hulvey and the minor daughter, Jessie Lee Hulvey, or whether the entire estate should be divided among the six nieces and nephews still living.

The court has reached the following conclusions which will be followed by the reasons therefor, and an examination of the authorities.

1. The real estate owned by the testator vested at death, and Edyth Hulvey became a tenant in common together with the other nieces and nephews and, therefore, became vested with her interest in said real estate which passed, by virtue of her death, to her husband, John Hulvey, and the minor daughter, Jessie Lee Hulvey.

2. Edyth Hulvey having died about two months after the death of the testator and before distribution of the personal estate, and said death having occurred during the normal period of estate administration, was divested by reason of her death of any interest in the personal property of the testator.

Any canon by which provisions of a will should be interpreted must almost of necessity be limited to the particular document and the surrounding circumstances. The court must engage itself primarily in an attempt to determine the intention of the testator. Precedents are helpful insofar as they may be considered in some respects analogous or for the purpose of post-rationalization.

A large number of cases, somewhat in point, may be found in 142 A. L. R. at page 139. The annotation considers the interest of an original beneficiary under a will with the limitation over in event of his death before being paid or receiving a bequest or devise.

Without considering all of these cases separately, the following summary is made by the authority at page 137:

"In the absence of a clear indication that the testator in-

tended that there should be an indefeasible vesting in the original beneficiary only if he should survive to an actual receipt of the bequest, the inclination of the courts, when called upon to construe a will providing for a gift over in the event of the death of the first taker before he receives or is paid a legacy, is to regard the gift over as having reference to death before the legacy is de jure payable. Thus the court is not in the habit of making conjectures in favor of finding in a will an intention on the part of testator that his legatee should not have the legacy or the residue unless they live to receive them in actual money."

These cases generally hold that a legatee's rights should not depend upon accident, fraud, delay, inconvenience, caprice, mistake or similar factors. This inclination is likewise shown in most of the American cases, such as Manice v. Manice (1871), 43 New York, 303.

"It is held that a limitation over to take effect in case of the death of the legatee before he has received his share, does not take effect if the legatee lives to become entitled to it, though he die before it has been paid."

A number of cases further point out that there is much greater reason for the adoption of this rule where the legatees all bear the same relationship to the testator than in a case when one or more might be strangers.

A great body of the law on this subject was developed in England. One of the leading cases is Hutcheon v. Mannington (1791), 1 Ves. Jr., 366, 30 English Reprint, 388. The legatee was in the East Indies, and he did not learn of his inheritance before his death. The court held that he was entitled to have the estate vested in him from the testator's death, notwithstanding a provision that in the case of his death before he may have received the bequest, it should go to his brothers and sisters.

Likewise, in In re: Samson (1896), 1 Ch. (England) 603, it was pointed out that in such cases, the courts favor early vesting regarding it as undesirable that rights and interests should depend on the degree of diligence with which trustees perform their duties.

As to American authorities, the validity of a gift over, of the kind under consideration here, appears to have been questioned only in a few instances, although at least one holding states that a limitation over in case a legatee should die before he or she shall have received the legacy bequeathed to him or her must be regarded as void for uncertainty.

The rule is again stated in L. R. A. 1918E at page 1100.

"In determining whether a postponed gift is vested or contingent, it is the general inclination of the courts to construe

# 358

legacies as vested whenever possible, such construction being regarded as more consonant with the probable intention of the testator."

A similar conclusion was reached by the Supreme Court of Pennsylvania in In re: Wengerd's Estate (1891), 22 Atlantic Reporter, page 869.

The law of Ohio' is clearly stated by the Supreme Court as follows:

"The law favors the vesting of estates at the earliest possible moment, and a remainder after a life estate vests in the remainderman at the death of the testator, in the absence of a clearly expressed intention to postpone the vesting to some future time." **Ohio National Bank v. Boone, 139 Oh St, 361, 22 O. O. 414.**

This presents the question, therefore: Does the language used in the will of Lydia Wheeler, the testator, clearly express an intention to postpone the vesting of (1) the real estate, and (2) the personalty, until the estate was distributed?

While it is true that this will contains a power of sale given to the executors, there is no express direction to sell. It is also true that §10509-227 GC (§2113.39 R. C.) provides that a power of sale should be construed to authorize a sale for any purpose deemed by the executor for the best interest of the estate.

This still does not constitute a direction to sell. It, at best, lodges in the executors a discretionary power of sale. It would be an untenable position to say that the executors in this case could merely, by the exercise of the power of sale, disinherit one of the legatees or allow the real estate to vest by restraining from exercising such power.

It cannot be urged that this testator, in the absence of express language, could have intended to clothe her executors with the power to determine who should or should not inherit.

It is likewise a sound presumption that the testator having employed able counsel to draft her will could have, if such was her intent, given an express direction to the executors to sell her real estate and divide the proceeds. In that event, this case would fall within the rule of **Junk v. Jones,** Court of Appeals of Ohio, Fayette County, decided June 11, 1942, North Eastern Reporter, 2d Series, Volume 44, page 796.

· The court did give consideration to the fact that the beneficiaries were non-residents and also that the will contained a statement that furnishings might be left in the home to assist the sale of the property, and although these facts might indicate some possible intention on the part of the testator that the executors sell the real estate, they are certainly insuf-

ficient to indicate any such clear intention and, for the reason already stated, that in the absence of an expressed intention, the court could not properly resort to conjectures to supply such intention.

For the foregoing reasons, under the authority of **Ohio National Bank v. Boone, 139 Oh St 361, 22 O. O. 414,** the testator not having clearly expressed an intention to postpone the vesting of the real estate, the same vested upon her death.

While the real estate vested at death and did not come into the hands of the executors, the personal property did, and it was the duty of the executors to collect the same and distribute it.

"Words deliberately used in a will are presumed to have been ■ placed there for a purpose, and cannot arbitrarily be ignored; they must be given a meaning to effect the intention of the testator, if such intention can be ascertained, and no rule of law violated." **41 O. Jur. Wills, Section 470, 605.**

"Technical words used in a will should have their strict ■ technical meaning, unless it appears that the testator used them in some other and secondary sense." **41 O. Jur. Wills, Section 517, 645.**

"In legal nomenclature, the term, 'distribution of estate,' ordinarily has reference to personalty and not to realty." Words and Phrases, Volume 13, page 23.

Distribution is ordinarily considered the apportionment, by a court, of the personal property of an intestate or its proceeds among those entitled to it according to the statutes of distribution. See Webster's Unabridged New International Dictionary. (Law)

Ballentine's Law Dictionary defines "distributees" as follows:
"Persons who are entitled under the statute of distribution to the personal estate of one who died intestate."

Also see Henry v. Henry, 31, N. C. (9 Iredell Law) 278-279.

Effect must, therefore, be given to the plain language of the ■ will, and since a condition was annexed to the legacy, that the legatee should be alive at the time of distribution, it is the opinion of the court that the legatee, in order to be entitled to a share in the personalty, would have to survive the normal period for the administration of the estate. See In re: Powers Estate, Surrogate's Court, New York County (May 8, 1950), 98 N. Y. S. 2d, 457.

After a consideration of the issues herein, the court cannot suppress a desire to humbly pay tribute to the profound wisdom of a great jurist of the 17th century.

"Wills and the construction of them do more perplex a man than other learning." Lord Coke in Roberts v. Rex, 2 Bulst. 123, 130 (1614).

Counsel may prepare a journal entry in accordance with this opinion.